UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHANIE BROECKER,<br><br>Defendant. | 4:18-CR-40027-01-KES<br><br><br>ORDER DENYING MOTION TO WITHDRAW GUILTY PLEA |

Defendant, Stephanie Broecker, moves under Federal Rule of Criminal Procedure 11(d) to withdraw her guilty plea. Docket 85. The government opposes the motion. Docket 107. For the following reasons, the court denies Broecker's motion to withdraw her guilty plea.

## BACKGROUND

On April 4, 2018, a federal grand jury named Broecker in an indictment, charging her with distribution of a controlled substance resulting in death. Docket 1. The indictment stated Broecker distributed heroin to K.P. and that his death resulted from use of that heroin. Docket 1. On November 16, 2017, Broecker mailed K.P. heroin from Rockford, Illinois. Docket 107 at 1. Earlier that morning, K.P. wired Broecker $150 in exchange. *Id.* Broecker included a note with the heroin that warned K.P. to be careful when using the drug. *Id.* at 1-2.

K.P. was found dead on November 19, 2017 after a night of drug use with

friends in Fedora, South Dakota. Docket 88 at 10; Docket 107 at 2. His blood tested positive for morphine and THC. Docket 107 at 2; Docket 88 at 12; Docket 88-1 at 22. His urine contained methamphetamine, fentanyl, codeine, morphine, and 6-monoacetylmorphine. Docket 107 at 2-3; Docket 88 at 12; Docket 88-1 at 25. The heroin sent from Broecker to K.P. was tested and found to contain 89% pure heroin. Docket 88 at 11; Docket 88-1 at 13. No other substances were identified. Docket 88 at 11.

After the indictment, Broecker was initially represented by the Federal Public Defender's office. Docket 14. She retained private counsel several weeks later and was represented by Lawrence S. Beaumont, an attorney based in Palos Heights, Ilinois. Docket 35. Rick L. Ramstad was local counsel. Docket 31.

On December 6, 2018, a plea agreement, sealed plea agreement supplement, and statement of factual basis—all signed by Broecker, Ramstad, and Beaumont—were filed with the court. Dockets 51, 52, 53. In the statement of factual basis, Broecker states:

> On or about November 16, 2017, I mailed heroin from Rockford, Illinois, to [K.P.] in Fedora, South Dakota, utilizing the United States Postal Service. [K.P.] received the U.S. Postal parcel that contained the heroin on November 18, 2017, in South Dakota. [K.P.] ingested the heroin that I sent him in the evening of November 18, 2017, and early morning hours of November 19, 2017. On November 19, 2017, [K.P.] died. Minnehaha County Coroner Dr. Kenneth Snell determined that [K.P.'s] cause of death was heroin toxicity, and that but for the use of the heroin I sent [K.P.], he would not have died on November 19, 2017.

Docket 52 at 1.

On December 10, 2018, the court held a change of plea hearing. Docket 55. Ramstad attended the hearing. *Id.* At the hearing, Broeker was placed under oath and participated in a Rule 11 colloquy with the court. Docket 96 at 2-14. The court questioned Broecker regarding all the relevant requirements of Federal Rule of Criminal Procedure 11(b)(1). *See id.* The court told Broecker she faced a mandatory minimum sentence of 20 years and a possible maximum sentence of up to life if she pleaded guilty. *Id.* at 8. The court then asked Broecker if she understood. *Id.* Broecker responded that she did understand. *Id.*

The court asked if Broecker was "fully satisfied with the counsel, representation, and advice that [she] received" from her attorney. *Id.* at 5. Broecker responded, "Absolutely, Your Honor." *Id.* The court continued, confirming with Broecker that she had discussed the plea agreement with both Beaumont and Ramstad. *Id.* at 5-6. Broecker stated that she had. *Id.* at 6. The court asked Broecker if anyone "made any promise or assurance to [her] that's not written down in the plea agreement or the plea agreement supplement to try to persuade [her] to accept those agreements." *Id.* at 6. Broecker confirmed no one had made such promises. *Id.* The court asked Broecker if she understood she could be sentenced more severely than she anticipated. *Id.* She stated that she understood. *Id.* The court asked Broecker if she had read the factual basis statement and if everything in the factual basis statement was the truth. *Id.* at 12. She confirmed she had read it before she signed it and it was

3

the truth. *Id.* Broecker entered a plea of guilty to the charge and the court accepted the plea and found her guilty. *Id.* at 14.

Broecker then moved to remain out of custody pending sentencing. *Id.* at 17. In response, the court asked the government if it was going to recommend that no sentence of imprisonment be imposed on Broecker to determine whether Broecker overcame the presumption of detention under 18 U.S.C. § 3143. *Id.* at 18. The government stated that it would be recommending the mandatory 20-year minimum sentence. *Id.*

More than two months later, on February 26, 2018, Broecker, through Ramstad, filed an *ex parte* motion to discharge Beaumont and appoint Ramstad as her attorney. Docket 58. In an attached affidavit, Broecker stated that Beaumont, a friend of her father's, had been retained by her mother to represent her. Docket 58-1 ¶ 3. Broecker claimed in the affidavit that Beaumont had initially indicated that the case had "significant legal issues" and he planned to obtain a forensic evaluation of the evidence. *Id.* ¶ 4. The issues Beaumont referred to arose in part because of a toxicology report that had been performed for the government by Axis Forensic Technology, which indicated that K.P.'s urine tested positive for fentanyl at the time of his death. *See* Docket 107-2 at 7. The same report also reported that K.P.'s blood contained cannabinoids, THC, and morphine. *Id.* at 4.

In the affidavit, Broecker stated that Beaumont requested money from her mother to retain an expert for an independent evaluation of the toxicology evidence. Docket 58-1 ¶ 6. But Beaumont did not provide copies of reports or

4

expert findings to Broecker or her family members before he presented the plea agreement to her. *Id.* When Broecker asked about the expert opinion, Beaumont told her that the government had a witness who would testify that the heroin caused K.P.'s death. *Id.* ¶ 7. He stated that Broecker would be convicted if she went to trial and she should instead cooperate and plead guilty. *Id.* ¶ 7.

The court held an evidentiary hearing on October 23, 2019. Docket 116. During the hearing, Broecker, her mother, and her sister testified. *Id.* Each elaborated on the impressions and understanding they each had of Beaumont's representation of Broecker before the change of plea hearing. FTR: Evidentiary Hearing on Motion to Withdraw Guilty Plea at 9:02 a.m. to 10:23 a.m., USA v. Broecker, No. 18-CR-40027-01-KES. At the hearing, Broecker testified that she raised concern about K.P.'s cause of death at the outset of Beaumont's representation, and that he "brushed it off" seemingly based on his own opinion and not medical evidence. *Id.* at 9:07 a.m. In later meetings, Broecker asked for a second toxicology opinion. *Id.* As far as Broecker knows, a second opinion was never obtained. *Id.* Broecker also stated that Beaumont never represented or stated to her that he had hired an expert. *Id.* at 9:30 a.m. Broecker testified that she knew at the time she signed the plea agreement and when she pleaded guilty that Beaumont had not obtained a second opinion on the toxicology report. *Id.* at 9:42 a.m. When asked by the government if she had concerns about Beaumont's failure to obtain a second opinion at the time she pleaded guilty, she said "yes." *Id.* at 9:43 a.m.

5

Broecker's mother testified during the hearing about meetings she attended with Beaumont regarding strategy in Broecker's case, specifically the toxicology report. *Id.* at 10:13 a.m. She testified that Beaumont told the family that even if another toxicologist were to find that Broecker's heroin was not necessarily the cause of K.P.'s cause of death, a jury may not believe that expert and might find Broecker guilty anyway. *Id.* Thus, Beaumont advised that a plea deal would be Broecker's best strategy. *Id.* Broecker's mother also testified regarding notes she took during the meetings. *Id.* at 10:13-10:15 a.m.; *see also* Docket 118, Exhibit B. The second page of notes, which Broecker's mother testified was taken towards the beginning of Beaumont's representation of Broecker, states that Beaumont said the toxicology report indicated "it was [Broecker's] drug [that caused K.P's death] because it's in blood – not urine." FTR: Evidentiary Hearing on Motion to Withdraw Guilty Plea at 10:13 a.m; *see also* Docket 118, Exhibit B. "Even if we got other toxicology reports to counter their findings," the notes state, "a jury doesn't have to believe us." Docket 118, Exhibit B.

At the hearing, Broecker also testified that Beaumont explained the severity of the sentence she could possibly receive, but in his opinion that would not be a likely outcome. FTR: Evidentiary Hearing on Motion to Withdraw Guilty Plea at 9:08 a.m. Beaumont represented to Broecker that she would potentially receive a sentence of a year or less if she pleaded guilty. *Id.* Broecker stated that the government did not represent at any point during the plea negotiations that she would receive a sentence under the 20-year

6

mandatory minimum. *Id.* at 9:34 a.m. Broecker also stated that if she is allowed to withdraw her plea of guilty, she will insist on going to trial. *Id.* at 9:42 a.m.

## LEGAL STANDARD

Under Rule 11(d), a defendant may move to withdraw her guilty plea prior to sentencing if there is a "fair and just reason" for doing so. Fed. R. Crim. P. 11(d)(2)(B). While the "fair and just" standard is liberal, it does not create an automatic right to withdraw a guilty plea. *United States v. Smith*, 422 F.3d 715, 723 (8th Cir. 2005). If the defendant demonstrates a "fair and just reason" to withdraw a plea of guilty, the court then considers three factors in determining whether to grant a motion to withdraw a plea of guilty: (1) any assertions of legal innocence, (2) the amount of time between the plea and the motion to withdraw, and (3) the prejudice to the government in granting the motion. *United States v. Austin*, 413 F.3d 856, 857 (8th Cir. 2005). "The defendant bears the burden of proving why one of the recognized justifications should permit a withdrawal of what [she] had solemnly made under oath." *Smith*, 422 F.3d at 723; *see also United States v. Maxwell*, 498 F.3d 799, 801 (8th Cir. 2007) (" 'A guilty plea is a solemn act not to be set aside lightly.' " (quoting *United States v. Embrey*, 250 F.3d 1181, 1183 (8th Cir. 2001))). "Ultimately, 'a defendant has no absolute right to withdraw a guilty plea before sentencing, and the decision to allow or deny the motion remains within the sound discretion of the trial court.' " *Smith*, 442 F.3d at 724 (quoting *United States v. Prior*, 107 F.3d 654, 657 (8th Cir. 1997)).

**DISCUSSION**

**1.     Fair and Just Reason**

Rule 11(d) requires a fair and just reason to withdraw a guilty plea. Fed. R. Crim. P. 11(d)(2)(B). Ineffective assistance claims are a fair and just reason under Rule 11(d) when a defendant can demonstrate that her attorney's performance was deficient and that she was prejudiced by it. *United States v. Trevino*, 829 F.3d 668, 673 (8th Cir. 2016). To show that her counsel was deficient, a " 'defendant must show that counsel's representation fell below an objective standard of reasonableness.' " *United States v. Cruz*, 643 F.3d 639, 642 (8th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

Where a claim of ineffective assistance " 'directly contradicts statements [a defendant] made under oath at [her] guilty plea hearing . . . that [she] was totally satisfied with [her] attorney's legal assistance,' " the claim is not a fair and just basis for withdrawing a plea. *Trevino*, 829 F.3d at 672 (quoting *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003)). Here, Broecker primarily alleges that Beaumont fell below an objective standard of reasonableness when he failed to obtain toxicological evidence refuting the government's claim that her heroin killed K.P. Docket 88 at 8. According to her own admission, Broecker knew of this alleged deficiency when she pleaded guilty. She knew Beaumont failed to obtain toxicological evidence before her change of plea hearing. FTR: Evidentiary Hearing on Motion to Withdraw Guilty Plea at 9:43

a.m. She stated her concerns about Beaumont's representation existed when she plead guilty. *Id.* But she testified under oath during the Rule 11 colloquy at her change of plea hearing that she was "absolutely" satisfied with Beaumont's representation of her. *Id.* Docket 96 at 5.

Broecker's mother's testimony corroborates that Broecker was aware that proceeding without a second toxicological opinion was a strategic choice. Broecker was advised by Beaumont and knew that even if a toxicology expert determined her heroin did not kill K.P., a jury may find her guilty based on the government's expert's testimony. FTR: Evidentiary Hearing on Motion to Withdraw Guilty Plea at 10:13 a.m. This suggests her decision to plead guilty, even without toxicological evidence, was a strategic, informed choice. Her attempt at reversing that choice now is not a "fair and just reason" to withdraw her plea under Rule 11(d).

Broecker also suggested during the hearing that Beaumont was deficient because he mislead her to believe she would receive little to no prison time if she pleaded guilty. *Id.* at 9:08 a.m. She claims he told her she could receive as little as probation. *Id.* But a claim that she believed the 20-year minimum would not be imposed contradicts the statements Broecker made under oath at her change of plea hearing. *See* Docket 96. Broecker stated that she understood the 20-year mandatory minimum applied to her. *Id.* at 8. She also confirmed that no one promised or assured her anything that was not written in the plea agreement or plea agreement supplement. *Id.* at 6. Broecker's claim

9

that Beaumont told her the 20-year minimum would not actually apply contradicts both of these statements that were made by Broecker under oath.

During her change of plea hearing, Broecker also stated that Ramstad, in addition to Beaumont, discussed the plea agreement and its terms with her. *Id.* at 5-6. Broecker stated during the evidentiary hearing that at no point during plea negotiations did the government represent that it would seek anything below the mandatory minimum. FTR: Evidentiary Hearing on Motion to Withdraw Guilty Plea at 9:34 a.m. Finally, the government stated during the change of plea hearing that it would recommend the 20-year mandatory minimum sentence. Docket 96 at 18. The evidence shows Broecker knew she was subject to a 20-year mandatory minimum, with or without Beaumont's advice, when she entered her guilty plea. Thus, Broecker's claims of ineffective assistance "directly contradict[] statements [Broecker] made under oath at [her] guilty plea hearing" and are not a fair and just basis for withdrawing a plea. *Trevino*, 829 F.3d at 672 (internal quotation omitted).

2. **Assertion of Legal Innocence**

Even if Broecker's ineffective assistance claims were a "fair and just" reason to withdraw her plea, the court must consider three additional factors. First, the court must evaluate any any assertions of legal innocence. *Austin*, 413 F.3d at 857. Here, Broecker states that she would insist on proceeding to trial if allowed to withdraw her guilty plea. FTR: Evidentiary Hearing on Motion to Withdraw Guilty Plea at 9:32 a.m. But this assertion is not based on a claim of innocence to selling the drugs to K.P. Docket 88 at 5-6. Broecker "makes no

10

claim that she is innocent of distributing heroin." *Id.* at 6. Rather, she asserts that the government has insufficient evidence to prove that the heroin was the "but-for" cause of K.P.'s death. *Id.* In essence, Broecker is not claiming her heroin did not kill K.P., but rather that the government cannot prove it killed K.P. This is not sufficient to assert legal innocence.

**3.    Time Elapsed Between Plea and Motion to Withdraw**

The court also considers the amount of time between the plea of guilty and the motion to withdraw. *Austin*, 413 F.3d at 857. The Eighth Circuit has found that a lengthy delay weighs against granting a defendant's motion to withdraw a defendant's guilty plea. *See, e.g.*, *United States v. Davis*, 583 F.3d 1081, 1092 (8th Cir. 2009) (finding no abuse of discretion when a district court denied a motion to withdraw guilty plea that was entered one month after the defendant pleaded guilty); *United States v. Jones*, 479 F.3d 975, 979 (8th Cir. 2007) (affirming district court's finding that defendant had no right to withdraw a guilty plea in part because the motion was filed seven months after his plea); *United States v. Mugan*, 441 F.3d 622, 631 (8th Cir. 2006) (affirming district court's denial of motion to withdraw guilty plea in part because the motion was made five months after he entered his plea, and three months after new counsel was appointed).

Here, Broecker moved to withdraw her guilty plea on July 16, 2019. Docket 85. She pleaded guilty on December 10, 2018. Docket 55. Ramstad was appointed as her attorney, and Beaumont was discharged, on March 5, 2019, over three and a half months before she moved to withdraw her plea and more

11

than seven months after her change of plea. Dockets 62, 85. Ramstad stated at the evidentiary hearing that the delay resulted from the complexity of the scientific evidence in Broecker's case. FTR: Evidentiary Hearing on Motion to Withdraw Guilty Plea at 10:32-10:40 a.m.

But Broecker's claim of ineffective assistance and subsequent motion to withdraw her guilty plea were made only after her draft presentence report was filed. *See* Docket 57. The report stated that Broecker's guideline term of imprisonment is 240 months. *Id.* at 15. This timing suggests Broecker's motion is based in part on "[p]ost-plea regrets . . . caused by contemplation of the prison term [s]he faces," rather than a fair and just reason as required by Rule 11. *Davis*, 583 F.3d at 1089 (internal quotation omitted). Thus, the seven-month delay between Broecker's change of plea hearing and her motion to withdraw weighs against allowing her to withdraw her guilty plea at this stage.

### 4. Prejudice to The Government

Lastly, the court considers prejudice to the United States from granting the motion. *Austin*, 413 F.3d at 857. A defendant's "fair and just reason" to withdraw her guilty plea "must always be balanced against prejudice to the government." *United States v. Morrison*, 967 F.2d 264, 269 (8th Cir. 1992) (footnote omitted). The government asserts that it will be prejudiced if Broecker withdraws her guilty plea. Docket 107 at 20-22. The government argues that the blood collected during K.P.'s autopsy was destroyed and thus cannot be analyzed further to disprove Broecker's assertion that fentanyl caused K.P.'s death. *Id.* at 20.

According to Doctor Snell, blood samples are destroyed one year from the month of an autopsy, per standard protocol. Docket 107-3. This protocol puts the destruction of the blood evidence in November, 2018, a month before Broecker pleaded guilty. FTR: Evidentiary Hearing on Motion to Withdraw at 10:46-10:47 a.m. But Broecker made two proffers to the government in September, 2019, and Beaumont informed the government at that time that Broecker would be accepting a guilty plea. *Id.* Prior to the blood being destroyed, the government argued that "every indication in this case was that there was going to be a plea." *Id.* at 10:47 a.m. Thus, the United States validly relied on Broecker's assertions through counsel that she did not plan on going to trial when it did not preserve the blood samples. The United States would be prejudiced by its inability to retest K.P.'s blood if Broecker's motion were granted and the case proceeded to trial now, over ten months after Broecker pleaded guilty. Thus, this prejudice also weighs against allowing Broecker to withdraw her plea.

## CONCLUSION

Broecker's ineffective assistance claims contradict her statements that were made under oath during her change of plea hearing. Thus, Broecker has not shown a fair and just reason for her to withdraw her guilty plea. The remaining factors considered by the Eighth Circuit—the time elapsed between plea and withdrawal, assertions of innocence, and prejudice to the government—also weigh against granting Broecker's motion to withdraw her guilty plea. Thus, it is

ORDERED that Broecker's motion to withdraw her plea of guilty (Docket 85) is denied.

Dated October 24, 2019.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE